# CILENTI & COOPER, PLLC
ATTORNEYS AT LAW
60 East 42nd Street – 40th Floor
New York, New York 10165
_____
Telephone (212) 209-3933
Facsimile (212) 209-7102

January 30, 2023

**BY ECF**

Hon. Katharine H. Parker, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

        *Re:*    *Encarnacion v. SJW Sushi Corp., et al.*
               *Case No. 22-CV-2200 (KHP)*

Dear Judge Parker,

      We are counsel to the plaintiff in the above-referenced matter, and jointly submit this letter with counsel for the defendants seeking the Court's approval of the settlement agreement ("Agreement") reached between the parties. The Agreement is being submitted contemporaneously herewith, and the parties respectfully request that the Court approve the Agreement because it represents a fair resolution of this matter, negotiated at arm's length between experienced counsel.

      *I.*    *The Need for the Court's Approval of the Agreement*

      As plaintiff's action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the parties' settlement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]). Courts have allowed an additional exception to the FLSA's restriction on settlement to include judicially supervised stipulated settlements. *See also D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *see also Sampaio v. Boulder Rock Creek Developers, Inc.,* No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007).

## II. Plaintiff's Claim for Unpaid Wages

### a. The Defendants

Defendants own and operate a sushi counter located within Cherry Valley Market, located at 801 East Gun Hill Road, Bronx, New York 10467 (the "Sushi Counter"). Defendants own and operate a sushi counter located within at least two (2) other Cherry Valley Market locations as well as other supermarkets in New York City. All of the sushi sold by the defendants at each of its sushi counters within the aforementioned supermarkets is prepared at the 801 East Gun Hill Road location.

### b. The Plaintiff

Plaintiff is the defendants' former employee who was hired by the defendants in or about May 2021 to work as a sushi preparer at the Sushi Counter. Neither at the time he was hired nor anytime thereafter did the defendants provide plaintiff with a written wage notice setting forth his regular hourly rate of pay and corresponding overtime rate of pay. Plaintiff's employment ended on or about December 21, 2021.

Plaintiff alleges that, for the first month of his employment, he worked three (3) days per week, and his work shift consisted of nine (9) hours per day Friday through Sunday from 7:00 a.m. until 4:00 p.m. During this period, plaintiff was paid, in cash, at the rate of $500 per week and worked twenty-seven (27) hours per week. Thus, Plaintiff makes no claim for unpaid wages during this period.

During the month of June 2021, Plaintiff alleges that he worked seven (7) days per week, and his work shift consisted of ten (10) hours per day from 6:00 a.m. until 4:00 p.m. During this period, plaintiff alleges that he was paid, in cash, at the rate of $1,000 per week straight time for all hours worked and worked seventy (70) hours per week.

Beginning in or about July 2021 and continuing through in or about September 2021, plaintiff alleges that he worked seven (7) days per week, and his work shift consisted of nine (9) hours per day from 5:00 a.m. until 2:00 p.m. During this period, plaintiff alleges that he was paid, in cash, at the rate of $1,000 per week straight time for all hours worked and worked sixty-three (63) hours per week.

Finally, beginning in or about October 2021 and continuing through the remainder of his employment on or about December 21, 2021, plaintiff alleges that he worked seven (7) days per week, and his work shift consisted of twelve (12) hours per day from 5:00 a.m. until 5:00 p.m. During this period, plaintiff alleges that he was paid, in cash, at the rate of $1,000 per week straight time for all hours worked and worked eighty-four (84) hours per week.

Based on the foregoing allegations, plaintiff estimated that he is owed approximately $23,000 in unpaid minimum wages and overtime compensation, with an equal amount in liquidated damages. Plaintiff also estimates that he is entitled to $1,260 in unpaid "spread of hours" premium. Together with statutory damages for the defendants' failure to provide wage

notices and statements, the total value of plaintiff's claims amount to approximately $59,118, exclusive of attorneys' fees and interest.

### III.  Facts and Law Contested by the Defendants

Defendants dispute the facts alleged by the plaintiff, specifically with respect to his working hours and his rate of pay. Defendants aver that plaintiff worked significantly less and paid more than he alleges, with the understanding that his wages would cover all the hours he agreed to work.

### IV.  The Settlement

As reflected in the attached Agreement, the parties have agreed to settle the case for a total of $30,000 to resolve all of plaintiff's wage and hour claims against the defendants, payable in full within ten (10) days of the Court's approval of the Agreement and dismissal of the action.

### V.  The Agreement is Fair and Reasonable

We believe this settlement to be a fair resolution to this litigation, due to *bona fide* disputes about the value of plaintiff's claims.

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.,* 900 F. Supp.2d 332, 335 (S.D.N.Y. 2012). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc*., No. 07 Civ. 86, 2008 U.S. Dist. LEXIS 20786, at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also In re Penthouse Executive Club Compensation Litig.,* No. 10 Civ. 1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).

Here, it is undisputed that this settlement did not result because of "overreaching" by the employer. To the contrary, the settlement was reached as a result of extensive arm's length negotiations between counsel who are well versed in the prosecution and defense of wage and hour actions, as well as during mediation before an experienced mediator appointed by the SDNY. Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See Aponte v. Comprehensive Health Management, Inc*., No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637 at *9 (S.D.N.Y. Arp. 13, 2013).

In light of the factual disputes concerning plaintiff's claims, disputes concerning the methodology of calculation of plaintiff's estimated damages, as well the risk of ongoing litigation, this settlement should be approved.[1] By settling now, plaintiff receives virtually all of his alleged underlying unpaid wages (as calculated by plaintiff) even after attorneys' fees and costs are deducted,

---

[1] Defendants contend that plaintiff's damages, if any, should have been calculated using the fluctuating workweek method, which would have further reduced plaintiff's estimated underlying damages.

while enabling the parties to avoid the risks inherent in any trial. Based on our assessment of litigation risks, which we discussed thoroughly with plaintiff, he made the decision to accept the defendants' offer. It is respectfully submitted that, in view of the foregoing, this settlement is a reasonable compromise of disputed issues and should therefore be approved.

### VI. Application for Attorneys' Fees

Pursuant to this firm's retainer agreement with plaintiff, our firm seeks retain one-third of the net proceeds of the settlement after expenses are deducted.[2] Therefore, plaintiff's counsel seeks $9,795.02 in fees, plus $612 in costs, for a total fee request of $10,407.02, which is below the firm's lodestar.

Attorneys' fees in FLSA settlements are examined, to ensure that the interests of plaintiff's counsel in his own compensation did not adversely affect the extent of the relief counsel procured for the clients. *See Wolinsky v. Scholastic*, 900 F.Supp.2d 332, 336 (S.D.N.Y. 2012). In this case, plaintiff's counsel fee of one-third is reasonable. Of course, had the case proceeded, assuming plaintiff prevailed, plaintiff's counsel would have made a fee application for much more than the amount currently sought in fees. Additionally, as stated above, plaintiff is being made almost whole even after fees and costs are deducted.

While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees over in excess of 40%. *Id.* at 206. This Agreement contains no such red flags. Moreover, since the *Cheeks* decision, courts routinely hold that a contingency fee award is presumptively valid where, as here, the proposed fee amount is exactly one-third of the net settlement amount. *See Caceres v. Brentwood Farmers Market*, No. 20 Civ. 3476, 2021 U.S. Dist. LEXIS 147063, at *4-6 (E.D.N.Y. May 4, 2021); *Garcia v. Cloister Apt. Corp.*, 16 Civ. 5542, 2019 U.S. Dist. LEXIS 51887, at *9-10 (S.D.N.Y. Mar. 27, 2019). Here, plaintiff agreed to a one-third contingency retainer agreement with counsel in connection with his wage-and-hour claims.

For all of the reasons set forth above, the parties respectfully request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal, which is being submitted simultaneously herewith, that expressly provides that the Court will retain jurisdiction over this matter solely for purposes of enforcing the Agreement.

Respectfully submitted,

/s/ *Justin Cilenti*
Justin Cilenti

Enclosures

cc: Sean Kwak, Esq. (by ECF)

---

[2] The firm's cost total $612 consisting of the filing fee and service of process.